IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MELISSA WREN,

                Plaintiff,

v.                                                                 Case No. 22-1180-JWB

THE CITY OF CHERRYVALE KANSAS, THE HOUSING
AUTHORITY OF THE CITY OF CHERRYVALE, KANSAS
d/b/a CHERRYVALE HOUSING AUTHORITY and SARA MYERS,

                Defendants.

**MEMORANDUM OF DECISION**

This matter is before the court on Plaintiff's motion for a temporary restraining order and memoranda in support. (Docs. 3, 4, 12.) Plaintiff moved for an order restraining Defendants from requiring her to move out of the two-bedroom apartment she leased from Defendant Cherryvale Housing Authority ("CHA") into a one-bedroom apartment. Plaintiff contends Defendants should have granted her request for a reasonable accommodation to stay in her two-bedroom apartment. The court held an evidentiary hearing on August 22, 2022. Plaintiff's motion is GRANTED for the reasons stated herein.

**I.    Facts and Procedural History**

The following facts are taken from Plaintiff's submissions and the evidence entered during the hearing which included exhibits and testimony from Plaintiff Melissa Wren, Gwen Corbett (Plaintiff's mother), and Defendant Sara Myers. Plaintiff is a 53-year-old single woman with multiple disabilities, including a need to use a wheelchair for mobility due to a right leg below-the-knee amputation. Plaintiff is currently undergoing evaluation for the necessity of a left leg below-the-knee amputation. Plaintiff receives financial assistance from KanCare based on a

1

"Person Centered Service Plan" ("plan"). Through that plan, Plaintiff receives a personal assistance aide for 41.25 hours during the day each week and 42-56 hours during the overnight hours. (Doc. 3, Exh. B.) That assistance is provided by two different aides who also have separate residences.

Defendant CHA is a public housing authority that provides housing for disabled individuals. CHA receives funding from the federal government and is required to follow regulations issued by the United States Department of Housing and Urban Development ("HUD"). HUD also issues guidelines to assist public housing authorities in developing standards for their housing. According to the HUD guidelines, HUD does not specify the number of persons who may live in public housing units of various sizes. (Hrg. Exh. H at 1.) The guidelines further state that if a person with a physical or mental handicap needs a unit that is larger than the unit size suggested by the guidelines, then it may be unlawful to fail to make reasonable accommodation to that family. (*Id.* at 2.) CHA has an Admissions and Continued Occupancy Policy ("ACOP") which includes its own guidelines on occupancy standards for rental units and a transfer policy which requires a transfer of a resident family when a unit is over housed, i.e. has more rooms than allowed for the number of occupants. (Hrg. Exhs. 2, 3.) The occupancy standards contained in the ACOP state that the minimum number of persons in a two-bedroom unit is "2" but "exceptions to the largest permissible unit size may be made in case of reasonable accommodations for a person with disabilities." (Hrg. Exh. 2.)

In June 2021, Plaintiff applied for a one-bedroom unit with CHA. Plaintiff testified that she applied for a one-bedroom unit because she did not know that CHA had two-bedroom units. While she was waiting for an available unit, Plaintiff moved into her mother's one-bedroom apartment. At that time, Plaintiff slept on her daybed in the living room and Plaintiff's mother and

son provided the assistance through her plan.  Although Plaintiff initially applied for a one-bedroom, Defendant Sara Myers, the Executive Director of CHA, informed Plaintiff that there would be a two-bedroom available and that Plaintiff could move into that unit.[1]  In February 2022, Myers knew that Plaintiff was going to move into the two-bedroom unit by herself.  Myers also knew that Plaintiff had aides who assisted Plaintiff with her daily care although Myers testified that she did not have a copy of Plaintiff's care plan until July 2022.  Myers testified that she believed that Plaintiff was able to occupy a two-bedroom unit because of Plaintiff's paid aides.

On March 13, Plaintiff signed a Dwelling Lease Agreement (the "lease") with CHA for the two-bedroom apartment located at 628 Independence Ave.  The lease provides that CHA may make an annual redetermination of the dwelling size in accordance with the approved ACOP.  There is also a provision which identifies certain situations in which CHA may make an interim redetermination of the dwelling size of the unit, although the parties agree that none of the situations occurred here. (Doc. 3, Exh. C.)  In her two-bedroom apartment, Plaintiff resides in one bedroom and the second bedroom is utilized by her nighttime aides.  Plaintiff testified that one aide, Roberta, provides assistance from Sunday through Tuesday, while her mother provides assistance from Wednesday to Saturday.  The nighttime services which Plaintiff receives are called "Enhanced Care Services."  These services have been defined by the State of Kansas in an application for a Home and Community-Based Services Waiver as "non-nursing physical assistance and/or supervision during the participant's normal sleeping hours in the participant's place of residence." (Doc. 12, Exh. E.)  The aide provides physical assistance or supervision with toileting, transferring, turning, intake of liquids, or mobility issues and prompting to take

---

[1] Plaintiff's and Myers' recollection of the events leading up to this differ.  However, these differences are not material to the ultimate decision at this stage in the proceedings.  Therefore, the court declines to make a factual determination as to what actually occurred.

medication. The aide is to "sleep and awake as identified on the participant's Person-centered Service Plan." (*Id.* at 3.)

On July 7, 2022, Myers notified Plaintiff that she was being transferred to a one-bedroom unit because she was over housed by one bedroom. Myers testified that the transfer came about because she was informed by a HUD representative that single individuals could not have a two-bedroom apartment unless they had a live-in aide or extensive medical equipment. Myers did not consider Plaintiff's aides as live-in aides because they did not live at Plaintiff's residence on a full-time basis, i.e. twenty-four hours a day, seven days a week. On July 12, Plaintiff appeared at the CHA board meeting and presented a packet for its consideration. The packet included a request for an accommodation. Specifically, Plaintiff stated that she needed a two-bedroom unit so that she would have a bedroom available for her nighttime aide to sleep. (Hrg. Exh. G.) After the meeting, Myers exchanged emails with CHA's HUD representative who stated that Plaintiff was over housed and that only single individuals with extensive medical equipment or a 100% of the time live-in aide were allowed to have two-bedroom units. (Hrg. Exh. 1.) On July 19, Myers denied Plaintiff's request and stated that the CHA is in need of a two-bedroom unit and Plaintiff was over the occupancy guidelines because of her status as a single family. (Doc. 3, Exh. D.) Plaintiff was informed that she was required to move to 618 Independence on August 23.

On August 15, 2022, Plaintiff filed this action against the City of Cherryvale, Kansas, CHA, and Myers. Plaintiff asserts that Defendants violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, the Rehabilitation Act, 29 U.S.C. § 794(a), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, by revoking the accommodation that was previously granted to her upon signing the lease or by failing to accommodate her disability after she requested accommodation on July 12.

**II.     Standard**

When addressing a motion for temporary restraining order, the court applies the same standard as it applies to a motion for preliminary injunction. Four factors must be shown by the movant to obtain injunctive relief: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction is in the public interest. *First Baptist Church v. Kelly*, 455 F. Supp. 3d 1078, 1084 (D. Kan. 2020). Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal. *Id.*, *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Additionally, some preliminary injunctions are disfavored and require a stronger showing by the movant—viz., movants must satisfy a heightened standard. They are '(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'" *Fish v. Kobach*, 840 F.3d 710, 723–24 (10th Cir. 2016) (citation omitted.) "In seeking such an injunction, the movant must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.* (citation and internal quotation marks omitted). Based on the relief sought here, the court finds that Plaintiff's requested relief does not require a stronger showing.

**III.    Analysis**

At the outset, the court finds that it has subject matter jurisdiction over Plaintiff's claims arising under federal law pursuant to 28 U.S.C. § 1331. The court will now turn to the sufficiency of Plaintiff's showing.

    A.     <u>Likelihood of success on the merits.</u>

Plaintiff has asserted claims under the FHA, the Rehabilitation Act, and the ADA. Plaintiff claims that Defendants have failed to accommodate her disability by not allowing her to remain in her two-bedroom apartment.

The FHA makes it unlawful for housing providers to "discriminate against any person in the terms, conditions, or privileges of rental of a dwelling because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). Prohibited discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To state a claim of discrimination under the FHA for failure to accommodate, a plaintiff must show: (1) that she is handicapped as defined by the FHA; (2) that Defendants knew or reasonably should have known of the claimed handicap; (3) that accommodation of the handicap may be necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that Defendants refused to make such accommodation. *Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1183 (D. Colo. 2016) (citing *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006)). The standards of a claim under the ADA and Rehabilitation Act are similar. *See Aubrey v. Koppes*, 975 F.3d 995, 1006 (10th Cir. 2020) (discussing elements of a failure to accommodate claim under the ADA); *see Sanchez v. United States Dep't of Energy*, 870 F.3d 1185, 1195 (10th Cir. 2017) (discussing Rehabilitation Act elements).

Reviewing the elements under the FHA, Plaintiff can likely meet her burden. The first two elements and the last element are not in dispute. With respect to the third element, Plaintiff testified that this accommodation is necessary for her to use and enjoy the dwelling. Plaintiff further testified that if she were to lose the second bedroom she could be in danger of losing

Roberta, one of her nighttime aides, because Roberta needs to be able to sleep during the night so that she can work her fulltime job during the day. Moreover, if her nighttime aides were required to sleep in the living room, that room would impair functionality of that room as a living room for her enjoyment. Besides arguing that Plaintiff is not entitled to a separate bedroom for her nighttime aides, Defendants did not offer any evidence to challenge Plaintiff's evidence on this element. Therefore, the court finds that on the current record Plaintiff has shown that this accommodation may be necessary to afford her an equal opportunity to use and enjoy the dwelling.

Next, Defendants argue that the accommodation is not reasonable because Plaintiff's aides are not live-in aides[2]; therefore, the accommodation is not reasonable because it violates HUD guidelines and regulations which could result in a loss of funding to CHA. Defendants' argument on this point is not persuasive. Although HUD has regulations, Defendants have not identified a regulation which does not allow Plaintiff to have a two-bedroom apartment. Indeed, as noted previously, HUD guidelines expressly decline to dictate standards for determining how many bedrooms are authorized for a particular number of occupants. *See Public Housing Occupancy Guidebook* at 71, available at https://www.hud.gov/sites/documents/DOC_10760.PDF (last accessed August 25, 2022). And, although HUD has additional guidelines for housing authorities, those guidelines are not mandatory as evidenced by CHA's own ACOP which has different occupancy guidelines than those set forth in the HUD guidelines. Moreover, the HUD guidelines

---

[2] Defendants concede that Plaintiff would be allowed an accommodation of a two-bedroom apartment if her nighttime aides were live-in aides. Under 24 C.F.R. § 5.403, a "live-in aide" is defined as "a person who resides with one or more ... persons with disabilities, and who: (1) Is determined to be essential to the care and well-being of the persons; (2) Is not obligated for the support of the persons; and (3) Would not be living in the unit except to provide the necessary supportive services." Defendants argued that Plaintiff's nighttime aides do not qualify as a live-in aide because the services are provided by two people instead of a sole aide and the aides do not live in the unit full-time. While this issue was not fully briefed by the parties, the court noted on the record that the regulation could be construed to mean Plaintiff's aides were live-in aides because they resided in Plaintiff's apartment on the nights that they were working. Because this issue was not fully presented to the court, however, the court noted that further briefing would be allowed on this issue as the case develops.

clearly state that a housing authority is to make reasonable accommodations in establishing occupancy standards. This same statement is also contained in CHA's ACOP.

Under the FHA, discrimination is a refusal to make a reasonable accommodation in a rule, policy, or practice when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3). By its plain terms, a reasonable accommodation "involves 'changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual.'" *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1502 (10th Cir. 1995) (quoting *Oxford House, Inc. v. Township of Cherry Hill*, 799 F. Supp. 450, 462 n. 25 (D.N.J. 1992)). Here, even if Plaintiff's nighttime aides are not live-in aides under the regulation as argued by Defendants, it is likely a reasonable accommodation to provide those aides with a bedroom because they are required to stay overnight with Plaintiff to provide her care and also expected to be able to sleep when Plaintiff is not in need of assistance. This accommodation is reasonable because otherwise Plaintiff would be required to sacrifice her living room space to provide a sleeping area for her nighttime aides and, potentially, the loss of a bedroom could result in at least one aide being unable to provide services to Plaintiff.

Finally, Plaintiff has further shown that this accommodation is reasonable because she is in the same position that she was in when she signed the lease in March 2022. At that time, Defendants knew that Plaintiff was going to live in the apartment by herself and receive care from her aides. Defendants allowed Plaintiff to move in under those conditions and the conditions have not changed. Therefore, any argument by Defendants that this accommodation is unreasonable is not persuasive based on their own acquiescence to the living arrangements in March 2022.

For these reasons, Plaintiff has shown she is likely to succeed on the merits of her claim alleging a failure to accommodate under the FHA.

B.   <u>Irreparable harm.</u>

To obtain a TRO, Plaintiff must show she will suffer irreparable harm in the absence of the order. *Winter*, 555 U.S. at 20. Plaintiff has alleged that without the TRO, she will be denied her right to reasonable accommodation, lose her living space if she is required to use her living room as a sleeping area for her aides, and potentially lose one of her nighttime aides if she is unable to provide her with a sleeping area. These types of harms are not readily remedied by money damages. The court concludes Plaintiff has made a sufficient showing of irreparable harm.

C.   <u>Balance of the equities.</u>

Plaintiff must also show that the balance of equities tips in her favor. *Winter,* 555 U.S. at 20. Here, Plaintiff has shown that she will be harmed by a deprivation of her right to reasonable accommodation under the FHA, the loss of her living space if she is required to move, and the potential loss of her nighttime aide. Although Defendants argue that they will lose grant funding because they violated HUD's guidelines, this argument is not persuasive for the reasons stated herein. Moreover, it would be highly unlikely that HUD would pull their funding because they are complying with this court's order. Defendants will also continue to receive rental income from Plaintiff for her unit and they will continue to be in the same position that they were in at the beginning of Plaintiff's lease in March 2022. In view of the evidence presented to the court and the limited arguments presented, the court concludes that the balance of equities weighs in favor of granting a TRO to permit Plaintiff to remain in her home and have a bedroom for her nighttime aides.

D.   <u>Public interest.</u>

Lastly, to obtain a TRO, Plaintiff must show that the granting of a TRO is in the public interest. *Winter,* 555 U.S. at 20. The court finds that this TRO is in the public interest because the

public has an interest in nondiscrimination in housing when a reasonable accommodation can be and has been provided to Plaintiff.

      E.      Security.

After considering the nature of the claims presented, and the absence of harm to Defendants to continue the lease in its current form, the court determines that no security should be required for the issuance of the TRO. *Cf.* Fed. R. Civ. P. 65(c).

      F.      Scope of the TRO.

The scope of the TRO, which was entered by the court on August 22, is as follows: The City of Cherryvale, Kansas, the Housing Authority of the City of Cherryvale, Kansas, d/b/a Cherryvale Housing Authority, and Sara Myers are hereby enjoined and ordered to refrain from requiring Melissa Wren to vacate her residence at 628 Independence Avenue in Cherryvale, Kansas.

The TRO expires no later than September 5, 2022, unless extended by the court for good cause or upon agreement by the parties.

**IV.**    **Conclusion**

Plaintiff's motion for a temporary restraining order (Doc. 3) is GRANTED.

IT IS SO ORDERED.  Dated this 25th day of  August 2022.

                                                        __s/ John Broomes_____
                                                        JOHN W. BROOMES
                                                        UNITED STATES DISTRICT JUDGE